**STATE of Minnesota, Respondent,**

v.

**Kelly RAHIER, Appellant.**

**No. C3–85–2036.**

Court of Appeals of Minnesota.

June 10, 1986.

Review Denied Aug. 20, 1986.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent.

James E. Ostgard, St. Paul, for appellant.

Heard, considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

Kelly Rahier appeals his conviction for first-degree assault, Minn.Stat. § 609.221 (1984), upon a 21-month-old child. Rahier claims the jury acted unreasonably in rejecting the testimony of his expert, who concluded that the child's injuries were accidental. We affirm.

## FACTS

On the evening of February 18, 1985, St. Paul paramedics responded to a call about an unconscious child. They were met at the house by Kelly Rahier, the only adult present and the child's sole caretaker that day. In the kitchen they found 21-month-old D.R. on his back, unconscious and breathing irregularly. The paramedics observed that D.R.'s eyes were dilated and that he had an injury, described as a two-inch by three-inch depressed "mushy spot," on the back of his head. They also observed black and blue marks around his eyes, a sutured cut on his lip, and bruises on his body. D.R. was unresponsive; when asked what had happened, Rahier did not respond.

D.R. was quickly transported to St. Paul-Ramsey Hospital, a major trauma center with neurosurgeons on duty 24 hours a day. En route to the hospital, Rahier was quiet, expressed no emotion, and did not inquire about the child's condition. When asked what had happened, Rahier said, "He fell." Rahier later explained that he and D.R. had missed a bus; while making a phone call, he heard D.R. cry outside. He went outside and brought D.R. into the kitchen, where D.R. collapsed and fell.

In the emergency room D.R.'s breathing improved and a doctor examined the head injury, described as life-threatening. Rahier told a nurse that D.R. fell to his knees after being brought in from outside and that D.R. had fallen on the ice a few nights earlier. The examination revealed a number of other injuries: old and new injuries to his lips, bruising around the eyes (probably one to three days old), small bruises on his lower abdomen, three parallel linear abrasions on his back, and several smaller bruises around his spine. Rahier told the examining doctor that D.R. fell to his knees, hit his chin, and re-injured his lip.

Given Rahier's incomplete explanation and the extent of D.R.'s injuries, the doctor ordered skull and long-bone x-rays. The x-rays revealed that D.R. had a very severe, depressed skull fracture. The cause of the injury was determined to be a significant force applied to a focal point, such as a blow to the head from a hammer or baseball bat. Testimony was received that D.R.'s head struck, or was struck by, a hard-pointed object, but not a sharp object.

A CAT scan showed signs of bleeding in the head, and the radiologist, Dr. Baumel, testified that the extent of healing indicated the skull fracture was less than 24 hours old. Dr. Baumel also testified that the long-bone x-rays revealed a fracture of D.R.'s forearm near the wrist, between two to three weeks and two to three months old, and some bruising in the rib cage area.

A clinical social worker at the hospital spoke with Rahier and Jody Scott, D.R.'s mother and Rahier's girlfriend. The matter was referred to the St. Paul Police. Rahier told Officer Randy Barnett that, after missing a bus, D.R. fell and struck the back of his head. In explaining D.R.'s other injuries, Rahier and Scott said D.R. fell against a waterbed railing and that he fell from his booster chair, cutting his lip. Scott claimed D.R. was clumsy and that she had never even spanked him.

Scott told investigators of D.R.'s other recent visits to the hospital. On February 13, 1985, he had a high fever and underwent a spinal tap, which Scott felt explained the back bruises. On February 15 he fell from his booster chair, requiring sutures on his lip. Dr. Steven Tredel, who treated D.R. at St. John's Hospital on February 13, did not notice any depressed skull injury at that time, but did notice that D.R. had several contusions on his back before the spinal tap was administered. Rahier again told police that on February 16 D.R. fell and slipped on ice in the alley. Rahier was subsequently charged with first-degree assault.

Dr. Ralph Faville, director of outpatient pediatrics at St. Paul-Ramsey Hospital and ultimately responsible for D.R.'s treatment, testified that Rahier's explanation, which was initially no explanation, and his subsequent varying explanations, which were found to be inconsistent with the injuries, led him to suspect that the injuries observed on February 18 were not accidental. Dr. Faville also had a record of D.R.'s December 20, 1984, visit for a head bump which had occurred around December 10, 1984, which Scott claimed resulted when D.R. fell down some stairs. Dr. Faville concluded that this fall was not the source of D.R.'s massive skull trauma on February 18. He concluded this because (1) neither the doctor examining D.R. on December 20, nor any doctor who saw D.R. from December 20 until the February 18 incident, observed any skull fracture on D.R.; (2) there was no sign of healing on February 18, while there was swelling and bleeding, indicating the fracture was recent; and (3) D.R. had no symptoms consistent with a major head trauma before December 20, but he did exhibit such symptoms (unconsciousness and unresponsiveness) on February 18.

Rahier's expert, Dr. Robert ten Bensel, a well-known child abuse expert, agreed that Rahier's and Scott's explanation, namely a fall on the ice on February 16 and a fall from a booster chair on February 15, could not have caused the injury. Dr. ten Bensel stated that, in his opinion, the December 10 incident was the likely cause of the skull fracture.

The jury convicted Rahier of first-degree assault, and he was sentenced to the presumptive term of 43 months in prison.

## ISSUE

Was the evidence sufficient to convict Rahier of first-degree assault?

## DISCUSSION

The scope of review to be applied is whether the jury could conclude, beyond a reasonable doubt, that Rahier was guilty. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978). In making this assessment, we must view the evidence most favorable to

the State and assume the jury believed the State's witnesses and disbelieved contradictory evidence. *State v. Ulvinen,* 313 N.W.2d 425, 428 (Minn.1981).

Rahier's sole contention on appeal is that the jury should have accepted Dr. ten Bensel's opinion over Dr. Faville's opinion. Dr. ten Bensel had never treated D.R., but he had reviewed his medical records and had met D.R., Scott and Rahier. Dr. Faville stated that, in his opinion, D.R.'s February 18 injuries were the result of child abuse. It is well-settled that in a dispute among expert opinions, jurors may believe whichever they think provides the more probative testimony. *DeMars v. State,* 352 N.W.2d 13, 16 (Minn.1984); *State v. Hoskins,* 292 Minn. 111, 193 N.W.2d 802 (1972). The jury could have accepted Dr. Faville's opinion over Dr. ten Bensel's.

Rahier was D.R.'s sole caretaker that day. He initially offered no explanation of the child's injuries and then made varying statements (where the child fell—outside or inside; whether he fell forward, backward, or to his knees) seemingly inconsistent with the severity of the injuries. These facts, coupled with Dr. Faville's testimony that the skull fracture was recent and was not accidentally caused, are sufficient to sustain the jury's verdict. It has been recognized that it is difficult to establish the facts in a prosecution for assaulting an infant because of the natural lack of eyewitnesses. Hence, resort is properly made to circumstantial evidence. *State v. Loss,* 295 Minn. 271, 204 N.W.2d 404, 409 (1973). The circumstantial evidence in this case is wholly inconsistent with any rational hypothesis other than Rahier's guilt.

As the trial court stated in denying Rahier's motion for acquittal or for a new trial:

Of necessity, the evidence in this matter as it relates to the manner in which the child [D.R.] was allegedly injured by the defendant is largely circumstantial and largely dependent upon expert medical opinion. The physical abuse of children is rarely carried on in the presence of others who would provide direct evidence of the nature and manner of the abuse itself. Circumstantial evidence carries the same weight as direct evidence. This matter is a classic example of a case calling for and dependent on the jury's determination of the credibility of witnesses and the weight to be given to the testimony adduced. That, of course, is their function.

\*　　\*　　\*　　\*　　\*　　\*

Here, the jury obviously found those witnesses from whose testimony they could draw reasonable inference of the defendant's guilt to be the most credible. There was sufficient evidence to provide the requisite proof beyond a reasonable doubt of the elements of the offense charged if the jury found the testimony of the witnesses providing that proof to be the most credible. It is apparent that they did.

We agree with these observations.

### DECISION

Appellant's conviction for first-degree assault is affirmed.

Affirmed.